UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES MURPHY, on behalf of himself and all others similarly situated,

                              Plaintiff,

– against –

L.I. ADVENTURELAND, INC.,

                              Defendant.

**OPINION AND ORDER**

18 Civ. 6742 (ER)

Ramos, D.J.:

Plaintiff James Murphy, a visually impaired individual who uses screen-reading software to read website content, brings this action against Defendant L.I. Adventureland, Inc., alleging that its website is not accessible to visually impaired people in violation of the Americans with Disabilities Act ("ADA"). Doc. 1. Pending before the Court is the parties' fourth application for approval of a proposed Consent Decree resolving this matter.[1] Doc. 12.

---

[1] Thrice before, the Court rejected the parties' proposals due to various defects in their submissions.

The Court rejected the first proposal because it (1) included settlement terms incorporating a "confidential side letter" that had not been provided to the Court, (2) incorrectly referred to this district as the "Eastern District of New York," (3) misstated the date that this action was filed, and (4) misstated the provisions of the federal-question jurisdiction statute, 28 U.S.C. § 1331. Doc. 7. The Court granted the parties leave to revise the consent decree. *Id.*

The Court refused to accept the second proposal because it (1) still incorporated by reference a separate settlement agreement that had not been provided to the Court, and (2) misnumbered a paragraph reference. Doc. 9, at 1. The Court once again allowed the parties to resubmit a revised consent decree. *Id.* at 2.

Yet again, the Court rejected the third proposal because (1) the proposed consent decree was missing the entire eighth page; (2) the date that the Plaintiff purportedly signed the document—two weeks before the Court granted leave to revise it—was necessarily wrong; and (3) the document contained even more erroneous references to paragraph numbers, notwithstanding that the Court had explicitly directed the parties to correct the paragraph numbering. Doc. 11. The Court admonished the parties that their

The Consent Decree provides that the Defendant's website is "currently at or near substantial conformance to the Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria" to make it accessible to disabled persons, and the Defendant will ensure that the website continues to substantially conform to those guidelines and will periodically test the website. Consent Decree ¶ 14, Doc. 12-1. The Consent Decree further requires the Defendant to use reasonable efforts to give disabled persons equal access to the website and otherwise not

---

repeated and careless errors were egregious given that the parties had three chances to submit their proposal and were asking the Court to adopt an obviously deficient proposal as an enforceable judicial decree. *Id.* at 2. The Court ordered that if the parties wished to submit yet another revised consent decree, they must show good cause why the Court should grant them leave to submit a fourth proposal. *Id.*

In response to the Court's Order, Plaintiff's counsel submitted a letter acknowledging that "there is no good reason to submit an erroneous document to the Court three consecutive times." Doc. 12. To explain the errors, counsel stated that "the *actual* Court Order was repeatedly overlooked" because he reviewed only the summary on the docket rather than the complete text of the Order itself. *Id.* Counsel further stated that "[t]his embarrassing failure happened repeatedly" and led to the failure to correct all the errors identified by the Court. *Id.* Counsel also stated that by the third submission the errors multiplied due to "exhaustion." *Id.* Counsel acknowledged that he could offer "no good cause" other than "the assurance that the parties will be extra cautious with submissions to the Court moving forward." *Id.* Attached to the letter was the parties' fourth proposed Consent Decree, which counsel assured would be their final submission. *Id.*

Notwithstanding the parties' promise to be "extra cautious" with their next submission, *id.*, and the Court's specific direction to correct the paragraph numbering errors that it identified in Paragraphs 15 through 19, Doc. 11, at 1, the fourth proposed Consent Decree *still* contains an erroneous paragraph reference in Paragraph 17. This paragraph concerns responding to a "notice as described in Paragraph 17"; however, there is no such description of the notice anywhere else in Paragraph 17. Consent Decree ¶ 17, Doc. 12-1. Rather, the "written notice of non-compliance" is described in Paragraph 16, which is the paragraph that clearly should be referenced. *Id.* ¶ 16.

The Court is increasingly frustrated that the parties are apparently incapable of submitting an error-free proposal, notwithstanding that the Court has afforded them numerous opportunities to do so and has expended its limited resources to provide specific guidance to assist them in that regard. The Court would be well within its authority to reject their proposed Consent Decree for the fourth and last time. However, such a rejection would only further harm the Plaintiff, who has waited patiently for the entry of his desired Consent Decree to ensure the accessibility of the Defendant's website. It would be unfair to further punish the Plaintiff for errors caused not by him but by his counsel, who by his own admission repeatedly neglected to read and follow the Court's orders.

Given counsel's record of mistakes, the Court will take it upon itself to correct Paragraph 17 so that it refers to Paragraph 16.

discriminate against disabled persons through the website. *Id.* ¶ 13. In the event of disputes, the parties must first attempt to informally resolve the issue, and if they cannot, they will each select an expert, and the two experts will select an independent accessibility consultant who will decide whether the disputed item can be made accessible using reasonable efforts. *Id.* ¶¶ 15–19. The Consent Decree is effective for 18 months or until the Department of Justice promulgates ADA regulations for websites, whichever comes first. *Id.* ¶ 12.

Although the parties agree that the website is already "currently at or near substantial conformance to" accessibility guidelines, the Consent Decree will further the ADA's objectives by requiring the Defendant to test and maintain the accessibility of its website. *Id.* ¶ 14. Furthermore, the Consent Decree requires actual substantial conformance to accessibility guidelines, and not just "near" conformance. *Id.* Thus, the Court concludes that the Consent Decree is fair, reasonable, and in the public interest.

Accordingly, the Court will enter the Consent Decree as modified pursuant to footnote 1.

It is SO ORDERED.

Dated: February 6, 2019
New York, New York

Edgardo Ramos, U.S.D.J.